United States District Court
Eastern District of New York

---

DAVID SEIDEMANN
38 Garfield Avenue
North Haven, CT 06473
(203) 281-6631
personally and in his capacity as
a member of the Brooklyn College faculty

       Plaintiff,

JOHNSON, J.

      -against-

BLOOM, M.J.

**COMPLAINT**

CV- **02 3389**

**Pro Se**

BARBARA BOWEN,
personally and in her capacity as
President of the PSC/CUNY (Professional Staff
Congress/City University of New York)
25 West 43rd Street
New York, NY 10036
(212) 354-1252



    and

PSC/CUNY
(Professional Staff Congress/City
University of New York)
25 West 43rd Street
New York, NY 10036
(212) 354-1252

      Defendants

---

Plaintiff appearing *pro se*, for his complaint, alleges as follows:

## INTRODUCTION

1. This is a proceeding pursuant to the First Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution and 42 U.S.C. 1981, et seq. seeking an order requiring that the Professional Staff Congress/City University of New York (hereafter PSC), which serves as the exclusive bargaining representative of the faculty at the City University of New York (hereafter CUNY),

   a) institute a policy that provides for an adequate and timely report of its expenditures to all agency fee payers (and thereby abandon a policy requiring fee payers to register an objection to ideological expenditures in order to receive such a report);

   b) immediately provide plaintiff with an accounting of the PSC's expenditures in sufficient detail to reveal ideological vs. non-ideological (i.e., chargeable vs. non-chargeable) expenses for all the fiscal years subsequent to May 7, 1999, the date the plaintiff achieved agency fee payer status;

   c) refund that portion of the plaintiff's agency fee that it spent on ideological activities in the fiscal year 1999-2000, along with accrued interest on the amount owed;

   d) abandon the policy under which it refused to refund any portion of the plaintiff's agency fee for the 1999-2000 fiscal year;

   e) eliminate any time restrictions on when agency fee payers may register their objections to ideological expenditures by the union;

   f) establish procedures whereby it places in escrow an objector's estimated share of ideological expenses no later than 30 days after the objector makes his or her objection known to the union.

2. This action is brought pursuant to 28 U.S.C. §1331, 28 U.S.C. §§2201, et seq., 42 U.S.C. §§1981, et seq., as to the claims which arise under the United States Constitution and the civil rights laws, and this Court's pendent jurisdiction over claims which arise under

the New York State Constitution.

## THE PARTIES

3. Plaintiff is a professor at Brooklyn College.

4. Brooklyn College is a constituent part of the City University of New York.

5. The City University of New York ("CUNY") is an organization created by State law, and, upon information and belief, authorized by the State of New York and the Regents of the University of the State of New York to administer the various colleges, community colleges and graduate schools of the City University of New York.

6. The PSC is recognized by CUNY as the exclusive collective negotiating representative (under the Public Employees' Fair Employment Act) for professors at CUNY.

7. Barbara Bowen is the current President of the PSC.

## STATEMENT OF FACTS

8. The PSC and CUNY have an agreement under which CUNY deducts union fees from the paychecks of CUNY professors, and remits those fees to the PSC.

9. The PSC and CUNY have an agreement under which professors who choose not to become PSC members are subject to an "agency fee" deduction from their CUNY paychecks.

10. The agency fee deduction is equivalent to the amount of dues required of a union member.

11. The PSC pays dues to affiliated state and national labor organizations.

12. The PSC has an agency fee refund procedure under which any person making

agency fee payments has the right to object to the expenditure of any part of the agency fee in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment. (See Exhibit 1)

13. The PSC restricts the time period for such objections (See Exhibit 1): it requires that the objection be registered between May 1 and May 31 of the year prior to the fiscal year to which the objection pertains. (The PSC defines its fiscal year to be September 1 to August 31.

14. Under PSC policy, registered objections are valid for only one year: objectors must renew their objection on a yearly basis if they wish to maintain eligibility for a rebate of their pro-rata share of the union's ideological expenditures. (See Exhibit 1)

15. Under current policy, the PSC provides information about its expenditures to agency fee payers only after fee payers register an objection to ideological expenditures by the union. (See Exhibit 1)

16. In effect, PSC policy requires fee payers to wait roughly two years after an objection is registered before it supplies them with the requisite financial information. (Fee payers are required to register an objection to ideological expenditures three months before a given fiscal year begins, wait for the fiscal year to end, and then wait further for an audit of that year to be completed, in order to obtain any information about PSC expenditures for that year: see Exhibit 1.)

17. Plaintiff tendered his resignation to the PSC on May 5, 1999 (Exhibit 2).

18. The PSC informed CUNY (Exhibit 3) that the plaintiff had resigned from PSC membership effective May 7, 1999.

19. The PSC also informed CUNY (Exhibit 3) that the payroll office should change plaintiff's status from union member to agency fee payer effective immediately, that is, as of

May 17, 1999, the date of the PSC letter.

20. The administrative burden on the PSC of converting the plaintiff's status from union member agency fee payer was slight: the process was completed in 12 days and involved the exchange of several letters.

21. The PSC places a severe burden on the First Amendment rights of agency fee payers when it restricts fee payers to only a 30-day period of the year in which they are permitted to register objections to the union's ideological expenditures for the following fiscal year.

22. Given its restricted objection period, the PSC could, at the close of the objection period, announce its intention to devote a large share of its budget to a cause that is repugnant to a previously non-objecting fee payer, and that fee payer would be powerless to stop the PSC from spending his money on that cause although:

   a) the expenditures are scheduled to be made between three and fifteen months in the future;

   b) the fee payer was not privy to the PSC plans for the upcoming fiscal year prior to the close of the objection period;

   c) the PSC could at any point in the year, within a few weeks of being notified of an objection, easily calculate and put in escrow the fee-payers pro-rated share of those expenditures.

23. In the same letter (of May 5, 1999) in which the plaintiff tendered his resignation as a union member (Exhibit 2), he notified the PSC President of his objection to the expenditure of any part of his fee in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment.

24. Plaintiff also registered his objection to such expenditures in letters to the PSC of June 28, 1999 (Exhibit 4a); July 30, 1999 (Exhibit 4b); May 13, 2000; May 4, 2001; and

May 3, 2002.

25. On May 17, 1999, the PSC informed the plaintiff that it refused as a matter of policy to refund any part of his agency fee (including that used for ideological purposes) in the fiscal year 1999-2000 (Exhibit 5).

26. The PSC refusal to refund any part of his agency fee (including that used for ideological purposes) in the fiscal year 1999-2000 was made despite the fact that the plaintiff had raised an objection to political expenditures on May 5, 1999, within the period that the PSC designates for objections and, therefore, roughly four months before the start of the upcoming fiscal year (in September 1999).

27. Before acting further, plaintiff waited until the deadline for the return of agency fee refunds for the fiscal year 1999-2000 expired (in February 2001).[1]

28. When the PSC failed to fulfill its obligation to issue a refund by that February 2001, the plaintiff repeated his request for the refund due him for the 1999-2000 fiscal year in letters to the PSC of March 2, 2001; March 25, 2001; April 22, 2001; May 4, 2001; and September 28, 2001.

29. In a letter to the plaintiff of October 12, 2001, the PSC repeated its claim that as a matter of policy the plaintiff was ineligible to receive an agency fee refund for the 1999-2000 fiscal year. (Exhibit 6)

30. The PSC policy under which it refused to make the plaintiff eligible for a refund

---

[1] Under § 209-a.2(a) of the New York State Public Employees Fair Employment Act, an agency shop fee refund must be returned to the employee no later than 21 months after the employee's request for a refund. Given the May 1999 objection by plaintiff to the use of his fee for ideological purposes in the 1999-2000 fiscal year, the PSC was obligated to provide a refund to plaintiff by February 2001.

for the 1999-2000 fiscal year may be deduced from statements in a letter to the plaintiff from the PSC Director of Legal Affairs of May 17, 1999 (Exhibit 5).

31. The substance of the PSC policy as outlined in the May 5, 1999 letter from the Legal Affairs Director (Exhibit 5) may be characterized as follows: individuals who register a timely objection to ideological expenditures during the same year in which they become agency fee payers remain ineligible to receive a rebate for ideological expenditures not only for the remainder of that fiscal year, but for the following fiscal year, as well (i.e., eligibility is delayed by *a full 15 months*).

32. Thus, in the case of individuals who register an objection to ideological expenditures during the same year in which they become agency fee payers, PSC policy permits the union to spend an objector's entire agency fee as it pleases for 15 months subsequent to the date of the objection, and provides no opportunity for a refund of any part of that fee.

33. As interpreted by its Director of Legal Affairs (Exhibits 5 and 6), the PSC policy regarding objectors creates in effect two categories of agency fee payers of unequal status.

34. The first category comprises people who were agency fee payers prior to the fiscal year in which they register an objection (hereafter "long-term fee payers"). The second category comprises those who declare themselves fee payers for the first time during the fiscal year in which they raise an objection (hereafter "recently declared fee payers").

35. Long-term fee payers who register timely objections (i.e., during May) in a given fiscal year become eligible for a rebate of ideological expenditures commencing at the close of *that* fiscal year (i.e., three months after their objection was registered).

36. In contrast, recently declared fee payers who register timely objections (i.e.,

during May) in a given fiscal year, do not become eligible for a rebate commencing at the close of *that* fiscal year, but at the close of the *following* fiscal year: it takes an additional year for the PSC to honor their objections (i.e., the eligibility of recently declared fee payers starts 15 months after their objections were registered).

37. Under PSC policy, a long-term fee payer and a recently declared fee payer can register objections to ideological expenditures at exactly the same moment in time, yet the latter must wait a full year longer than the former before becoming eligible for a rebate of those expenditures.

38. The PSC can cite no valid argument for discriminating between long-term and recently declared fee payers: by the close of the designated objection period in a given fiscal year both groups have achieved equal status as agency fee payers and both groups have expressed timely objections to ideological expenditures by the union.

39. Equally situated agency fee payers are entitled to equal rights under the law.

## CASE LAW PERTINENT TO PSC POLICIES AND ACTIONS

40. *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292 (1986) held that the agency shop itself significantly impinges on First Amendment rights of a nonunion employee and "the government and union have a responsibility to provide procedures that minimize that impingement and that facilitate a nonunion employee's ability to protect his rights". (*Hudson* 475 U.S., at 307)

41. *Hudson* 475 U.S. (at 303) held that unions must carefully tailor their procedures to minimize the infringement on the First Amendment rights of nonunion employees.

42. *Hudson* 475 U.S. (footnote 11, at 303) suggests that the procedures used in regard to the agency shop must be designed to be "least restrictive" of freedom of belief and association.

43. *Hudson* 475 U.S. held (at 306) that unions are required to disclose information about its expenditures to agency fee payers, and may not impose a requirement that fee payers register an objection in order to receive that information: "Leaving the nonunion employees in the dark about the source of the figure for the agency fee -- and requiring them to object in order to receive information..." does not adequately protect the First Amendment rights of nonunion employees. (Hudson 475 U.S, at 306)

44. The Court held in *Hudson* 475 U.S. (at 307) that a union could fulfill its obligation in regard to the required financial disclosure by calculating its fee on the basis of its expenses during the preceding year.

45. *Hudson* 475 U.S. (at 307) indicates that an acknowledgment by the union of only its non-chargeable expenditures does not provide "an adequate disclosure of the reasons why [nonmembers] were required to pay their share" of the expenses that the union claims as chargeable.

46. *Hudson* 475 U.S. (at 307) requires that unions identify to agency shop payers *both* (a) the expenditures that it admittedly incurred for purposes that did not benefit dissenting nonmembers and (b) the expenditures that it claims to have spent for collective bargaining and contract administration.

47. *Hudson* 475 U.S. (at 306 - 307) indicates that an adequate disclosure of finances must include the major categories of expenses, as well as verification by an independent auditor.

48. If a union makes a payment to affiliated state and national labor organizations,

*Hudson* 475 U.S. (at 307) requires that unions include in their financial report to fee payers "either a showing that none of it was used to subsidize activities for which nonmembers may not be charged, or an explanation of the share that was so used."

49. In *Abood* v. *Detroit Board of Education*, 431 U.S. 209 (1977) and *Lehnert* v. *Ferris Faculty Association*, 500 U.S. 507 (1991), the Court held that compelling a public employee to finance a union's ideological activities unrelated to collective bargaining would violate the First and Fourteenth Amendments. (*Abood* 431 U.S., at 235 - 237; and *Lehnert* 500 U.S., at 517).

50. In *Machinists* v. *Street*, 367 U.S. 740 (1961) and *Abood* 431 U.S. 209, the Court found that once objectors made it known to the union of their objection to the use of their money for the support of political causes, the union was "without power to use payments thereafter tendered" by such objectors for those political causes. (*Street*, 367 U.S., at 771; *Abood* 431 U.S., at 238)

51. In *Lehnert* 500 U.S. 507, the Court defined specific union activities that may *not* constitutionally be supported through objecting employees' funds. These include:

    a) legislative lobbying, electoral, or other union political activities outside the limited context of contract ratification or implementation (500 U.S. at 519-522). (Lobbying for financial support of the employee's profession or of public employees generally is cited as an example of a proscribed activity. [500 U.S. at 520]);

    b) union programs designed to secure funds for public education (500 U.S. at 527);

    c) litigation that does not concern petitioners' bargaining unit and, by extension, union literature reporting on such litigation (500 U.S. at 528);

    d) public relations efforts designed to enhance the reputation of the teaching profession and covering information picketing, media exposure, signs, posters, and buttons (500 U.S. at 528).

52. As of this date, the PSC maintains a policy that requires that a fee payer register an objection to ideological expenditures by the union in order to receive information about the union's expenditures.

53. As of this date, the PSC has not provided the plaintiff, who became a fee payer effective May 7, 1999, with adequate information about its expenditures.

54. As of this date, in the case of individuals who register an objection to ideological expenditures during the same year in which they become agency fee payers, PSC policy permits the union to spend an objector's entire agency fee as it pleases for 15 months subsequent to the date of the objection, and provides no opportunity for a refund of any part of that fee.

55. As of this date, the PSC refuses as a matter of policy to refund any part of the plaintiff's agency fee (including that used for ideological purposes) for the fiscal year that began September 1, 1999 despite the plaintiff's timely objection (i.e., of May 5, 1999) to the union's ideological expenditures.

56. As of this date, the PSC maintains a policy that restricts fee payers to only a 30-day period of the year in which they are permitted to register objections to the union's ideological expenditures for the following fiscal year.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

57. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth hereat.

58. Hudson 475 U.S. (at 306) holds that "Leaving the nonunion employees in the dark about the source of the figure for the agency fee -- and requiring them to object in order to receive information…" does not adequately protect the First Amendment rights of nonunion employees.

11

59. The PSC policy that requires an agency fee payer to register an objection to ideological expenditures by the union in order to receive information about the union's expenditures (See Exhibit 1) abridges and will abridge the fee payer's First and Fourteenth Amendment rights as defined in Hudson 475 U.S., at 306.

## SECOND CLAIM FOR RELIEF

60. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth hereat.

61. The PSC's failure to provide the plaintiff, who became a fee payer effective May 7, 1999, with adequate information about its expenditures abridges and will abridge the fee payer's First and Fourteenth Amendment rights as defined in Hudson 475 U.S., at 306.

## THIRD CLAIM FOR RELIEF

62. Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth hereat.

63. *Street* 367 U.S. (at 771) and *Abood* 431 U.S. (at 238) hold that once objectors make known to the union their objection to the use of their money for the support of political causes, the union was "without power to use payments thereafter tendered" by such objectors for those political causes.

64. The PSC policy regarding individuals who register an objection to ideological expenditures during the same year in which they become agency fee payers (because that policy permits the union to spend an objector's entire agency fee as it pleases for 15 months subsequent to the date of the objection, and provides no opportunity for a refund of any part of that fee) is arbitrary, discriminatory, and abridges and will abridge the First and Fourteenth Amendment rights of fee payers as defined in *Street* 367 U.S., at 771, and *Abood* 431 U.S., at 238.

## FOURTH CLAIM FOR RELIEF

65. Plaintiff repeats and realleges paragraphs 1 through 64 as if fully set forth hereat.

66. The refusal of the PSC to refund any part of the plaintiff's agency fee (including that used for ideological purposes) for the fiscal year that began September 1, 1999 despite the plaintiff's timely objection (i.e., of May 5, 1999) to the union's ideological expenditures is arbitrary, discriminatory, and abridges and will abridge his First and Fourteenth Amendment rights as defined in *Street* 367 U.S., at 771, and *Abood* 431 U.S., at 238.

## FIFTH CLAIM FOR RELIEF

67. Plaintiff repeats and realleges paragraphs 1 through 66 as if fully set forth hereat.

68. *Hudson* 475 U.S. 292 holds that unions must carefully tailor their procedures to minimize the infringement on the First Amendment rights of nonunion employees (at 303), and must design procedures to be "least restrictive" of freedom of belief and association (footnote 11, at 303).

69. The PSC policy that restricts agency fee payers to only a 30-day period of the year in which they are permitted to register objections to the union's ideological expenditures for the following fiscal year places a severe burden on the First Amendment rights of agency fee payers. (See ¶¶ 21 and 22)

70. In contrast, the PSC bears only a slight administrative burden as the result of its policy restricting the objection period to a 30-day period. (See ¶ 20)

71. Thus, the PSC policy that restricts agency fee payers to only a 30-day period of the year in which they are permitted to register objections to the union's ideological

expenditures for the following fiscal year abridges and will abridge the First and Fourteenth Amendment rights of fee payers as defined in *Hudson* 475 U.S., at 303.

SIXTH CLAIM FOR RELIEF

72. Plaintiff repeats and realleges paragraphs 1 through 71 as if fully set forth hereat.

73. The PSC policy that permits the union to spend an objector's entire agency fee as it pleases for a minimum of 3 months (and a maximum of 15 months) subsequent to the date of an objection, and that provides no opportunity for a refund of any part of that fee, abridges and will abridge the First and Fourteenth Amendment rights of fee payers as defined in *Street* 367 U.S., at 771, and *Abood* 431 U.S., at 238, which indicate that a union, once notified of an objection, is "without power to use payments thereafter tendered" by the objectors for political causes.

**DEMAND FOR RELIEF**

**WHEREFORE,** plaintiffs ask that the Court render Judgment:

1. compelling the PSC to abandon its policy which requires agency fee payers to register an objection to ideological expenditures in order to receive information about the union's finances;

2. compelling the PSC to provide its agency fee payers with (a) an annual report of its major expense categories including a listing of both constitutionally chargeable and non-chargeable expenses (as mandated in *Hudson* 475 U.S., at 307; and as defined in *Lehnert* 500 U.S., at 519 – 528); (b) sufficient information to indicate whether PSC payments to affiliated state and national labor organizations were used for non-chargeable purposes (as per *Hudson* 475 U.S., at 307); and (c) verification by an independent auditor (as per *Hudson* 475 U.S., at 307);

3. compelling the PSC to provide the plaintiff with financial reports of its expenditures for all the fiscal years subsequent to May 7, 1999, the date the plaintiff achieved agency fee payer status;

4. compelling the PSC to abandon a policy directed at some objectors (those who register an objection to ideological expenditures during the same year in which they become fee payers) that permits the union to spend the objectors' entire agency fee as it pleases for 15 months subsequent to the date of the objections, and that provides no opportunity for a refund of any part of that fee;

5. compelling the PSC to return to the plaintiff, in accord with the principles in Abood 431 U.S. 209, Lehnert 500 U.S. 507, and Street, 367 U.S. 740, that portion of his agency fee which it spent on ideological activities in the fiscal year 1999-2000, along with accrued interest on the amount owed;

6. compelling the PSC to eliminate any time restrictions on when agency fee payers may register their objections to ideological expenditures by the union;

7. compelling the PSC to initiate a policy, in accord with the principles in *Street*, 367 U.S., at 771; and *Abood* 431 U.S., at 238, whereby it places in escrow an objector's estimated share of ideological expenses no later than 30 days after the objector makes his or her objection known to the union;

8. awarding the plaintiff the costs of this action;

9. granting such other, further or different relief as this Court deems appropriate.

Dated: Brooklyn, New York
June 10, 2002

*David Seidemann*

David Seidemann
38 Garfield Avenue
North Haven, Connecticut 06473
(203) 281-6631 (home telephone)
(718) 951-5425 (work telephone)

*Georgina M. Garcia*

**Georgina M. Garcia**
**Notary Public State of NY**
**No. 01GA4858808**
**Qualified in Kings County**
**Term Expires May 12, 2006**

15

**PSCcuny**

Professional Staff Congress/CUNY
25 West 43rd Street, 5th Floor
New York, New York 10036

<u>AGENCY FEE REFUND PROCEDURE</u>

Any person making agency fee payments to the Union under the agency shop provision in the Union's collective bargaining agreement shall have the right to object to the expenditure of any part of the agency fee which represents the employee's pro rata share of expenditures by the Union and its affiliates in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment.

Such objection, if any, shall be made by the fee payer ("the objector") individually notifying the Union President of his/her objection during the period between May 1 and May 31 of the year prior to the fiscal year of the Union to which the objection pertains.  The Union's fiscal year commences on September 1st.

For each objector, on September 1st the Union shall place into an interest bearing escrow account (with interest accruing at the current rate) an amount equal to his/her pro rata share of projected, refundable expenditures, together with an additional amount to mitigate against the possibility of an underestimated segregation of funds.

Upon the close of the fiscal year of the PSC and its affiliates and after respective independent audits are available, a calculation shall be made expeditiously of the actual respective amounts expended on refundable matters; and a refund shall be mailed to each objector, including accrued interest, together with the appropriate documentation used to determine the amount of the refund.

If an objector is dissatisfied with the amount of the refund on the ground that it allegedly does not represent his/her pro rata share of refundable expenses, s/he may appeal the calculation.  (An objector making such an appeal hereafter is called "an appellant".)

Such appeal shall be: (a) in writing, (b) sent to the Union President and (c) submitted within thirty (30) days from the postmark date of the refund.

Within ten (10) days after the close of the appeal period, the Union shall request the New York office of the American Arbitration Association, or other impartial body, the appointment of an arbitrator to hear and resolve expeditiously any appeal(s) that have been made.

The Union, at its option, may consolidate all appeals for resolution in one proceeding.

An appellant may present his/her appeal to the arbitrator in person or in writing.

Any fees charged by the arbitrator or the American Arbitration Association, or other impartial body, in connection with this proceeding shall be borne by the Union.

#

**EXHIBIT 2**

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee).
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

3. Article Addressed to:
President Irwin Polishook
PSC/CUNY
25 West 43rd St.
New York, NY 10036

4a. Article Number
Z 513 190 755

4b. Service Type
☐ Registered   ☒ Certified
☐ Express Mail   ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature (Addressee or Agent)

PS Form 3811, December 1994       102595-99-B-0223   Domestic Return Receipt

Thank you for using Return Receipt Service.

May 5, 1999
Professor David Seidemann
38 Garfield Avenue
North Haven, CT 06473
(203) 281-6631

President Irwin Polishook
PSC/CUNY
25 West 43rd Street,
New York, NY 10036

Dear President Polishook,

    I am writing to notify you that:

    1) I no longer wish to be considered a member of the union: therefore, as of the next fiscal year, I will be paying a fee to the union under the agency shop provision of the contract.

    2) I wish to register my objection to the expenditure of any part of my union fee in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment.

        Yours truly,

        David Seidemann

        David Seidemann

**EXHIBIT 3**

# PSCcuny | Professional Staff Congress / City University of New York
25 West 43rd Street   New York, New York 10036   212/354-1252 Fax 212/302-7815

**OFFICERS**

**Irwin H. Polishook**
President

**Richard J. Boris**
First Vice President

**Shirley Beheshti**
Secretary

**Jo-Ann Graham**
Treasurer

**Jane Davenport**
**Carlos L. Hargraves**
**Joyce B. Siler**
**Bernard Sohmer**
**Mohamed M. Yousef**
University-wide Officers

**Ruth Frisz**
Vice President
Senior Colleges

**Joyce E. Barrett**
**Phyllis Gold Gluck**
**Louis Massa**
Senior College Officers

**Katherine Stabile**
Vice President
Community Colleges

**Avis Anderson**
**Norah Chase**
**Richard Chorley**
Community College Officers

**Peter I. Hoberman**
Vice President
Cross Campus Units

**Steven Trimboli**
**Stuart Zuckerberg**
Cross Campus Officers

**Susan B. Prager**
Vice President
Part-Time Personnel

**Israel Kugler**
Deputy President Emeritus

**Harold Wilson**
Vice President Emeritus
Cross Campus Units

**STAFF**

**Frank R. Annunziato**
Executive Director

**Debra L. Bergen**
Director, Contract
Administration &
University-wide
Grievance Counselor

**Sheri Nevis**
Coordinator,
Administrative Services

**Diana Rosato**
Coordinator,
Membership Department

**D. Nicholas Russo**
Director, Legal Affairs

**Carol Sims**
Associate Director
Communications

**Clarissa Gilbert Weiss**
Director, Pension
and Welfare Benefits

TO:          Gwen Harewood
             Payroll Officer, Brooklyn College

FROM:        Diana Rosato
             Coordinator/Membership Department

RE:          PSC Membership Status Change
             Professor David Seidemann
             SS#: 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

DATE:        May 17, 1999

Please be advised that Professor David Seidemann has resigned from
PSC membership effective 5/7/99.   Please change his membership
status from union member (code 274) to agency shop fee payer (code
290).  Please make this change within your payroll records effective
immediately.

If you have any questions, please do not hesitate to contact me.  Thank
you for your attention and cooperation.


cc: Professor David Seidemann
    Mr. D. Nicholas Russo

**American Association of University Professors**
**American Federation of Teachers Local 2334 • New York State AFL-CIO**
**New York State United Teachers • New York Central Labor Council**



June 29, 1999
Professor David Seidemann
38 Garfield Avenue
North Haven, Connecticut 06473
(203) 281-6631

President Irwin Polishook
PSC/CUNY
25 West 43rd Street
New York, NY 10036

Dear President Polishook,

In a letter to you of May 5, 1999, I informed you of my objection to the expenditure of any part of my union fee in aid of activities or causes of a political or ideological nature only incidentally related to the terms and conditions of employment. In a letter to me of May 17, 1999, Mr. Nicholas Russo, the PSC Director for Legal Affairs, acknowledged receipt of my request for an agency fee refund.

I note that under the relevant procedures, on September 1, 1999 the Union shall place into an interest bearing escrow account (with interest accruing at the current rate) an amount equal to my pro rata share of projected, refundable expenditures, together with an additional amount to mitigate against the possibility of an underestimated segregation of funds. I further note that upon the close of the fiscal year of the PSC and its affiliates and after respective independent audits are available, a calculation shall be made expeditiously of the actual respective amounts expended on refundable matters; and a refund shall be mailed to each objector, including accrued interest, together with the appropriate documentation used to determine the amount of the refund.

I write to inform you that in order to properly calculate the refund due me at the end of the fiscal year, you must tabulate costs for the following specific categories, all of which entail activities or causes of a political or ideological nature only incidentally related to the terms and conditions of employment:

**1) <u>Legislative lobbying, electoral, or other political union activities outside the limited context of contract ratification or implementation.</u>**

The union may only use my money for lobbying activities that concern legislative ratification of, or fiscal appropriations for the implementation of, the collective-bargaining agreement. The Union may not, therefore, use my money to lobby for the financial support of my profession or of public employees generally.

**EXHIBIT 4A**
**CONTINUED**

**2) Programs designed to secure funds for public education**

    The union may not charge me for the costs of programs designed to secure funds for public education in New York, or for that portion of the costs of PSC publications (such as the Clarion) which reported these activities.

**3) Public relations programs designed to enhance the reputation of the teaching profession**

    Public speech in support of the teaching profession generally is not sufficiently related to the union's collective-bargaining functions to justify compelling my support. Thus, the union may not charge me for the costs of informational picketing, media exposure, signs, posters and buttons incurred as part of public relations campaigns designed to enhance the reputation of the teaching profession.

**4) Litigation that does not concern my bargaining unit (and by extension, the costs of union literature reporting on such activities)**

**5) Direct donations or interest-free loans to unrelated bargaining units for the purpose of promoting employee rights or unionism generally**

    Given that the union bears the burden of proving the proportion of chargeable expenses to total expenses, I ask that you confirm for me now that you have in place fiscal procedures which account for the Union's expenditures in the aforementioned categories. You will thereby verify that the Union will be able to fulfill its obligation to provide me with my *pro rata* share of these expenses at the end of the fiscal year, as well as the appropriate documentation used to determine the amount of my refund.

                                                Yours truly

                                                David Seidemann

**EXHIBIT 4B**

July 30, 1999
Professor David Seidemann
38 Garfield Avenue
North Haven, Connecticut 06473
(203) 281-6631

Mr. D. Nicholas Russo
Director, Legal Affairs
PSC/CUNY
25 West 43rd Street
New York, NY 10036

Dear Mr. Russo,

In your letter to me of July 21, 1999, you note that the union is "not necessarily in accord with the totality of [my] interpretations or expectations" regarding the refund of that part of my agency fee devoted to political expenses.

Because you did not specify which aspect of my interpretation you dispute, I write now to give the Union due notice: the Court has defined proscribed political activities in great detail and, therefore, the Union is, at a minimum, required to follow that guideline. Further, because the union bears the burden of proving the proportion of chargeable expenses to total expenses, I ask that you confirm for me now that you have in place fiscal procedures which account for the Union's expenditures in the proscribed categories. (I detailed those categories in my letter of June 29, 1999 to President Irwin Polishook.)

Yours truly

David Seidemann

**EXHIBIT 5**

# *PSCcuny*

**Professional Staff Congress / City University of New York**
25 West 43rd Street   New York, New York 10036   212/354-1252 Fax 212/302-7815

**OFFICERS**

**Irwin H. Polishook**
President

**Richard J. Boris**
First Vice President

**Shirley Beheshti**
Secretary

**Jo-Ann Graham**
Treasurer

**Jane Davenport**
**Carlos L. Hargraves**
**Joyce B. Siler**
**Bernard Sohmer**
**Mohamed M. Yousef**
University-wide Officers

**Ruth Frisz**
Vice President
Senior Colleges

**Joyce E. Barrett**
**Phyllis Gold Gluck**
**Louis Massa**
Senior College Officers

**Katherine Stabile**
Vice President
Community Colleges

**Avis Anderson**
**Norah Chase**
**Richard Chorley**
Community College Officers

**Peter I. Hoberman**
Vice President
Cross Campus Units

**Steven Trimboli**
**Stuart Zuckerberg**
Cross Campus Officers

**Susan B. Prager**
Vice President
Part-Time Personnel

**Israel Kugler**
Deputy President Emeritus

**Harold Wilson**
Vice President Emeritus
Cross Campus Units

**STAFF**

**Frank R. Annunziato**
Executive Director

**Debra L. Bergen**
Director, Contract
Administration &
University-wide
Grievance Counselor

**Sheri Nevis**
Coordinator,
Administrative Services

**Diana Rosato**
Coordinator,
Membership Department

**D. Nicholas Russo**
Director, Legal Affairs

**Carol Sims**
Associate Director,
Communications

**Clarissa Gilbert Weiss**
Director, Pension
and Welfare Benefits

May 17, 1999

Professor David Seidemann
38 Garfield Avenue
North Haven, CT  06473

Re:  Agency Fee Refund for Fiscal Year 1999-00

Dear Professor Seidemann:

This is to acknowledge receipt of your application for an agency fee refund for the fiscal year 1999-00.

Since you have requested to become an agency fee payer in this 1999-00 year, you are not eligible for an agency fee refund until the 2000-01 year.  I have transmitted your request to convert from a PSC member to a PSC agency fee payer to the Membership Department.

You will be notified of the procedure to apply for your agency fee refund in April 2000.

Very truly yours,

D. Nicholas Russo
Director of Legal Affairs

cc:  PSC Membership Department

DNR/cgr
Opeiu 153

**American Association of University Professors**
**American Federation of Teachers Local 2334 • New York State AFL-CIO**
**New York State United Teachers  • New York Central Labor Council**

**EXHIBIT 6**

# PSCcuny

**Professional Staff Congress / City University of New York**
25 West 43rd Street    New York, New York 10036    212/354-1252 Fax 212/302-7815
Visit our website at http:\\www.psc-cuny.org

**OFFICERS**

**Barbara Bowen**
President

**Steven London**
First Vice President

**Cecelia McCall**
Secretary

**John Hyland**
Treasurer

**Stanley Aronowitz**
**Blanche Cook**
**Frank Deale**
**Susan O'Malley**
**Sheldon Weinbaum**
University-wide Officers

**Michael Fabricant**
Vice President
Senior Colleges

**Robert Cermele**
**Peter Ranis**
**Nancy Romer**
Senior College Officers

**Anne Friedman**
Vice President
Community Colleges

**Louis I. Alpert**
**Samuel E. Farrell**
**Ingrid Hughes**
Community College Officers

**Peter I. Hoberman**
Vice President
Cross Campus Units

**Steven Trimboli**
**Robbi Weaver**
Cross Campus Officers

**Eric Marshall**
Vice President
Part-Time Personnel

**Irwin H. Polishook**
President Emeritus

**Israel Kugler**
Deputy President Emeritus

**Harold Wilson**
Vice President Emeritus
Cross Campus Units

**STAFF**

**Deborah E. Bell**
Executive Director

**Mary Ann Carlese**
Associate Executive Director

**Debra L. Bergen**
Director, Contract
Administration & University-wide
Grievance Counselor

**Mary Crystal Cage**
Director, Public Relations

**Peter Hogness**
Newspaper Editor

**Sheri Nevis**
Coordinator,
Administrative Services

**Diana Rosato**
Coordinator,
Membership Department

**D. Nicholas Russo**
Director, Legal Affairs

**Clarissa Gilbert Weiss**
Director, Pension

October 12, 2001

Professor David Seidemann
38 Garfield Avenue
North Haven, CT 06473

Re: Agency Fee Refund for
Fiscal Year 1999-2000

Dear Professor Seidemann:

In response to your letter to me, dated September 28, 2001, you are not eligible for an agency fee refund for the fiscal year 1999-2000. As I explained to you in my letters of April 6, 2001 and May 17, 1999 (copies of which are enclosed), you were ineligible to receive an agency fee refund for that fiscal year because you were not a fee payer at the time you applied for the refund in May of 1999.

My letter to you of May 15, 2001 (copy also enclosed) was sent to you in error.

Very truly yours,

D. Nicholas Russo
Director, Legal Affairs