FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 08 2004 *Rec'd*

P.M.
TIME A.M.

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————————

DAVID SEIDEMANN,

          Plaintiff,

    -against-                           CV 02 3389 (SJ)(LB)

BARBARA BOWEN, personally and in her capacity
as President of the PSC/CUNY and PSC/CUNY
(Professional Staff Congress/City University of
New York)

          Defendants.

—————————————————————————

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES R. SANDNER
Attorney for Defendants
Office & P. O. Address
52 Broadway
New York, NY 10004-1603
(212) 533-6300

CHRISTOPHER CALLAGY
BRYAN D. GLASS
 Of Counsel

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF FACTS ................................................... 3

POINT I

    THE UNION'S AGENCY FEE REFUND PROCEDURE SATISFIES THE *HUDSON*
    STANDARDS AND SHOULD BE UPHELD. ................................. 6

POINT II

    DEFENDANTS' GOOD FAITH REFORMATION OF THE AGENCY FEE
    PROCEDURE AT ISSUE HEREIN, THEIR REFUND WITH INTEREST TO
    PLAINTIFF OF ALL RELEVANT AGENCY FEES, AND THE SWORN
    AFFIDAVIT OF THE UNION'S EXECUTIVE DIRECTOR TO APPLY ALL
    RELEVANT LAW IN ALL FUTURE AGENCY FEE DETERMINATIONS MOOT
    PLAINTIFF'S CLAIMS. ............................................. 10

POINT III

    DEFENDANTS DID NOT OBTAIN FROM PLAINTIFF AN INVOLUNTARY
    LOAN ........................................................... 16

CONCLUSION ........................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Andrews v. Education Ass'n.*, 829 F. 2d 335 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

*Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066 (1986) . . . . . . . . . . . . *passim*

*Lehnert v. Ferris Faculty Association*, 500 U.S. 507, 111 S.Ct. 1950 (1991) . . . . . . . . . . *passim*

*Lamar Advertising of Penn, LLC v. Town of Orchard Park,*
*New York*, 356 F.3d 365 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Machinists v. Street*, 367 U.S. 740, 774, 81 S. Ct. 1784 (1961) . . . . . . . . . . . . . . . . . . . . . . 8

*New York Public Interest Research Group v. Whitman*, 321 F.3d 316 (2nd Cir. 2003) . . . . . 13, 14

*Tsombanidis et al. v. West Haven Fire Department*, 352 F.3d 565 (2nd Cir. 2003) . . . . . . . . . . 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

DAVID SEIDEMANN,

Plaintiff,

-against-                                              CV 02 3389 (SJ)(LB)

BARBARA BOWEN, personally and in her capacity
as President of the PSC/CUNY and PSC/CUNY
(Professional Staff Congress/City University of
New York)

Defendants.
_____

## **PRELIMINARY STATEMENT**

This reply memorandum of law is submitted in support of defendants' cross-motion for

summary judgment and in opposition to plaintiff's summary judgment motion, dated May 4,

2004.

Plaintiff *pro se* filed his instant Third Amended Complaint to challenge defendant PSC's

existing agency fee refund procedure, which is annexed as Exhibit 15 to the Third Amended

Complaint. In his Third Amended Complaint, he has pled 10 causes of action. As set forth

below, plaintiff fails to state a constitutionally cognizable cause of action on his challenges to the

present PSC procedure and misstates case law in an effort to gain that which he is not entitled to

under law.

Moreover, his remaining causes of action are moot because (1) plaintiff has been

reimbursed in full with interest for all agency fee payments to remedy any past problems with

the procedure and/or application of PSC agency fee procedures, and (2) as set forth in the

1

Affidavit of Deborah Bell annexed to defendants' memorandum of law, application of the PSC policy has been modified prospectively to address plaintiff's remaining concerns. Thus, summary judgment should be granted on behalf of defendants at this juncture and plaintiff's motion for summary judgment should be denied.

## STATEMENT OF FACTS

On January 19, 2004, plaintiff *pro se* filed his Third Amended Complaint in this action, alleging that defendants violated his constitutional rights by application of its agency fee refund procedure. The present agency fee refund procedure is annexed as Exhibit 15 to the Third Amended Complaint. Plaintiff's Third Amended Complaint contains 10 causes of action, which are addressed *in seriatim* below.

Initially it must be noted that there is no basis to sue PSC President Barbara Bowen in her individual capacity, as plaintiff has failed to sufficiently allege her personal knowledge of the circumstances herein.

It is also noteworthy that plaintiff has not sought nor obtained class action status in this case, so he does not have standing to object on behalf of other agency fee payers within the PSC.

Over the course of this litigation the parties adjusted their respective positions regarding the agency refund procedure in question and its implementation. Deborah E. Bell, the Executive Director of defendant Professional Staff Congress ("PSC"), in her affidavit annexed to defendants' memorandum of law relates that the PSC amended its agency refund procedure as a consequence of this litigation and describes in detail the reasons for its past practice regarding agency fee objection. *See passim* Bell Affidavit annexed to Defendants' Memorandum of Law as Exhibit A.

In the past the PSC had relied on its now retired Legal Director, Nicholas Russo, to handle the agency fee refund procedure. *Id.* ¶ 3. To Executive Director Bell's knowledge, the only arbitration of an agency fee objector's claim in the history of the PSC resulted in a decision and award favorable to the PSC's broad understanding of its discretion in matters relating to the chargeability to nonmembers of union expenditures. *Id.* ¶ 5.

After consultation with counsel, the PSC has amended its agency refund procedure and the manner of its implementation to reflect the current state of the law. *Id.* ¶¶ 8-10. Now, agency fee objectors will have an estimated amount of rebatable fees returned to them in advance of any audit, and sufficient information will be provided to potential objectors prior to the month-long period set aside each year for filing an objection. In this way objectors will receive a *pro rata* refund and they will no longer be required to wait until the precise amount of rebatable monies is determined through the annual audit. *Id.* ¶¶ 11-12.

Executive Director Bell states in her affidavit both that she is aware of the holding in *Lehnert v. Ferris Faculty Association*[1], that the so-called free-rider concern is inapplicable where lobbying extends beyond the effectuation of a collective bargaining agreement and unnecessarily interferes with a dissenter's free speech rights and that all prospective decisions regarding the chargeability of union expenditures will be made according to the principles announced in *Lehnert. Id.* ¶¶ 15-17.

Further, Executive Director Bell states that the PSC will refund Plaintiff's entire agency fee amount for 2001-2002, 2002-2003, and 2003-2004 school years, in an effort to resolve the instant proceeding. *Id.* ¶ 18.

Throughout the instant proceeding the PSC has demonstrated its good faith in handling any and all of Plaintiff's concerns regarding its policies and practices at issue. Indeed, Executive Director Bell affirms that the PSC will deal fairly and equitably with any and all of Plaintiff's concerns now and in the future. *Id.* ¶ 21.

Since the PSC has now refunded all of Mr. Seidemann's agency fees that could possibly

---

[1]500 U.S. 507, 111 S.Ct. 1950 (1991)

4

be at issue in this matter, and since the PSC has acted in good faith to conform its practices and procedures to the current state of the law, there is no legitimate basis to question the good faith of the PSC going forward in its administration of all things agency fee. *See* Callagy letter to Seidemann along with copies of checks annexed hereto as Exhibit 1; *Id.* ¶ 22.

Given the refund of any and all monies at issue, and the PSC's affirmation of the *Lehnert* standards, there is no genuine issue of material fact before the Court.

## POINT I

### THE UNION'S AGENCY FEE REFUND PROCEDURE SATISFIES THE *HUDSON* STANDARDS AND SHOULD BE UPHELD.

It is axiomatic that all members of a bargaining unit have an obligation to contribute financially to the administration of its own collective bargaining agreement regardless of the ideological variety obtaining within any given unit. To hold otherwise grants safe harbor to the so-called free-rider who enjoys all the benefits of other people's work without ever having to contribute to it. In an effort to balance the rights of individuals to withhold contribution to ideological causes they oppose against the rights of unions to receive support for the unit-wide work which they perform, courts have required unions to develop safeguards for the objecting nonmember.

When a union's plan satisfies the standards established by United States Supreme Court in *Chicago Teachers Union v. Hudson*[2], however, the plan should be upheld even in the face of plausible less restrictive alternatives proposed by agency fee objectors. *Andrews v. Education Ass'n.*[3] *Hudson* simply requires that unions provide an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of fee before an impartial arbiter, and an escrow of the amounts reasonably in dispute pending the challenge. *Id.*[4]

Contrary to Plaintiff's claims and assertions as embodied in his third amended complaint, unions are under no obligation to realize his idiosyncratic refund plan which would impose new

---

[2]475 U.S. 292, 106 S.Ct. 1066 (1986).

[3]829 F. 2d 335 (2d Cir. 1987).

[4]829 F. 2d 335, 339.

6

and unprecedented burdens upon Defendants. As the Unites States Supreme Court in *Hudson* held, "[t]he Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses as well as verification by an independent auditor."[5]

Here, the PSC agency refund procedure - as amended - provides objectors with sufficiently detailed information and/or access to it to enable a nonmember to register an objection to the amount of fee. *See* Exhibits 1 - 5 of Plaintiff's Third Amended Complaint. Among materials available to an agency fee objector are the relevant PSC budgets and audits which include, *inter alia*, a breakdown of union expenditures and an analysis of chargeable and non-chargeable expenses for purposes of nonmember objection. *Id.*

Indeed, the gravamen of Plaintiff's third amended complaint seems to be that nonmembers are asked to visit the union's website in order to review certain of the financial materials relevant to their decision whether or not to object to the union's fee calculation. *See* pp. 2-3 of the Third Amended Complaint. Whereas a union may not raise a cost defense to an otherwise impermissible infringement upon a nonmembers constitutional rights, a nonmember should not be permitted to raise a druthers defense every time they disagree with an otherwise legal union plan.

Directing a nonmember to a website for the express purpose of assisting that nonmember in reaching a decision regarding agency fee is no more burdensome - if at all - than stuffing the nonmember's mailbox with a thick packet of financial materials. Clearly, Plaintiff bears some responsibility for reading and interpreting the information provided by the union. Given the fact

---

[5]475 U.S. 292, 307, 106 S.Ct. 1066, 1076 n. 18.

that Plaintiff is a university professor, it is difficult to understand how recourse to a website poses an impermissible obstacle to the exercise of his constitutional rights.

The *Hudson* mandate simply does not require the union to relieve nonmember objectors of their responsibility to formulate a reasonable objection. Plaintiff fails to raise a single factual issue to support his contention that access to the union website somehow hampers his ability to do so. Since Defendants amended their agency refund procedure to comply with *Hudson* and its progeny, its plan should be upheld notwithstanding Plaintiff's ongoing dissatisfaction with aspects of it.

Further, The United States Supreme Court has already held that while a nonmember's burden is imply to make an objection known to the union, dissent, itself, is not to be presumed by the union and must be affirmatively made known to the union by the dissenting employee. *Machinists v. Street.*[6]

Plaintiff alleges that the PSC agency fee refund procedure violates his First Amendment constitutional rights because an agency fee payer is required to object annually to ideological expenditures. Complaint ¶ 184.

Plaintiff offers absolutely no support for this assertion. Indeed, were the PSC to presume annually and automatically that Plaintiff - or any other agency fee payer for that matter - objected to certain union expenditures, the PSC would be guilty of the very violation herein charged: usurping the right of a nonmember to object or acquiesce to certain union expenditures. While Plaintiff seeks to assert his present

---

[6]367 U.S. 740, 774, 81 S. Ct. 1784 (1961)

ideological objections in perpetuity, Defendants decline to exercise a nonmembers prerogative prematurely.

No court has ever found such a requirement to violate the First Amendment.

## POINT II

**DEFENDANTS' GOOD FAITH REFORMATION OF THE AGENCY FEE PROCEDURE AT ISSUE HEREIN, THEIR REFUND WITH INTEREST TO PLAINTIFF OF ALL RELEVANT AGENCY FEES, AND THE SWORN AFFIDAVIT OF THE UNION'S EXECUTIVE DIRECTOR TO APPLY ALL RELEVANT LAW IN ALL FUTURE AGENCY FEE DETERMINATIONS MOOT PLAINTIFF'S CLAIMS.**

Plaintiff alleges that defendant PSC compels objectors to pay the costs for activities that are non-chargeable to objecting fee payers, such as for (1) lobbying designed to secure funds for public education and other political issues; (2) public rallies, picket lines, concerts, and letter writing campaigns; (3) public relations activities; (4) reports in the PSC newspaper concerning nonchargeable activities; (5) reports on the PSC website concerning nonchargeable expenses; (6) campus based activities; (7) salary expenses; (8) expenses charged to objectors calculated based on nonchargeable salary expenses; (9) legal costs; and (10) AFT and NYSUT nonchargeable expenses. Complaint ¶ 25.

As set forth in the affidavit of Deborah E. Bell (hereinafter "Bell Affidavit") accompanying defendants' memorandum of law, to the extent any *Lehnert* problems existed in application of PSC procedures, they have been remedied prospectively. Moreover, plaintiff has been reimbursed in full for his past agency fee contributions. Thus, this cause of action is entirely moot at this juncture.

The mootness exception also does not apply herein. Plaintiff merely seeks a declaratory judgment at this juncture before ascertaining any present problems in application of the existing PSC procedure.

10

Moreover, in plaintiff's August 10, 2004, memorandum of law he misstates the holding in *Lehnert v. Ferris Faculty Association*,[7] in claiming that *Lehnert* announced a blanket prohibition against charging agency fee payers for any and all public rallies or public relations events on the theory that such events are inherently political. Even a cursory reading of *Lehnert*, however, shows that the Supreme Court held no such thing.

In *Lehnert*, the Court took pains to clarify that where public relations are of a political nature and in a public forum it may not be charged to objecting agency fee payers.[8] The Court did not hold that all speech relating to public relations or rallies was *ipso facto* violative of objectors' rights.

Here, Executive Director Bell has sworn that speech that is "ideological in nature and insufficiently related to the administration of the collective bargaining agreement"[9] will not be charged to objectors. There is nothing objectionable in the union's promise to characterize ideological expenditure as non-chargeable. Indeed, it is precisely what the law enjoins them to do.

Plaintiff's mischaracterization of the policies and procedures regarding agency fee refund at the American Federation of Teachers and New York State United Teachers with whom the Professional Staff Congress ("PSC") is affiliated are irrelevant as those sister unions are not parties to this action. Moreover, the plaintiff's allegations regarding the policies of the PSC are nothing more than speculation and, as such, must be dismissed.

---

[7]500 U.S. 507 (1991).

[8]*Id.* at 528-29.

[9]*See* Exhibit A , Bell Affidavit ¶ 14, annexed to Defendants Memorandum of Law.

11

Plaintiff argues that his claims are not rendered moot despite the reformation of the relevant agency fee refund procedure, the full refund of all of his agency fees in question, and the sworn affidavit of the PSC Executive Director promising to uphold the constitutional requirements for the charging of agency fees. While alluding to the maxim that voluntary cessation of certain conduct does not moot a case,[10] plaintiff cites inappositely to *Chicago Teachers Union, Local No. 1 v. Hudson.*[11]

Unlike *Hudson*, defendants in this matter have already reformed their agency fee refund procedures under the auspices of this Court. Even assuming *arguendo* that plaintiff is correct in his assertion that voluntary cessation is in and of itself insufficient to moot a case, the PSC has done far more than merely voluntarily cease offending practices, it has utterly reformed its procedures and made full refund with interest even as it has taken pains to explain to this Court its intention to remedy any past defects into the future.

It simply cannot be said of the defendants in this action that they have somehow shown a propensity for avoiding reform and remedy. On the contrary, the defendants' conduct has been tractable at all points of this proceeding, and it is defendants who have demonstrated time and again their good faith in resolving plaintiff's claims.

Executive Director Bell stated in her affidavit that the PSC had relied on an arbitration award from the late 1970s in developing its approach to agency fee refund procedures. In addition, the long-serving Legal Director of the PSC recently retired and, in his stead, the PSC leadership has had to assume his duties and acquire expertise on a range of questions affecting

---

[10]*See* Plaintiff's August 10 Memorandum of Law at pp. 4-8.

[11]475 U.S. 292 (1986).

union administration. Understandably, this takes a little time. Since the retirement of its Legal Director, the PSC leadership has met with counsel for purposes of reinforcing the union's rights and obligations in agency fee law. There is no reason whatever to believe that the PSC would continue applying an outmoded agency fee approach in the future given its statements before this Court that it has been apprised of the appropriate legal standards going forward.[12]

Plaintiff conflates error with bad faith. Whatever errors there were have been corrected and defendants' good faith has been amply demonstrated throughout this proceeding.

In *Lamar Advertising of Penn, LLC v. Town of Orchard Park, New York*,[13] the Second Circuit held that voluntary cessation of allegedly illegal conduct usually will render a case moot provided that defendants demonstrate that there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.[14]

Here, defendants' refund of all of plaintiff's fees is an intervening event which eradicates the effects of the alleged violation and there is no reason to expect recurrence.

Similarly, in *New York Public Interest Research Group v. Whitman*,[15] the Second Circuit held that voluntary compliance moots a case where it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.[16] Here, defendants have already

---

[12]*See* Bell Affidavit annexed to Defendants' Memorandum of Law as Exhibit A.

[13]356 F.3d 365 (2nd Cir. 2004).

[14]*Id*. at 375.

[15]321 F.3d 316 (2nd Cir. 2003).

[16]*Id*. at 327.

refunded to plaintiff any and all fees in question as well as having reformed its procedure under guidance from this Court. Indeed, the full refund provided plaintiff is a windfall for him since he is being given his entire fees and not simply those smaller amounts of money which he argues for in this case.

Defendants have made it absolutely clear that plaintiff's constitutional interests will be protected going forward. Thus, defendants have met their burden under *Whitman* to show that the complained of conduct could not reasonably be expected to occur. Indeed, for it to recur, defendants would have to violate their own procedures. Even in the defunct agency fee procedure, defendants abided by their policy. Having reformed it and demonstrated good faith time and again herein, defendants have done all they could reasonably be expected to do to warrant mooting plaintiff's claims.

Plaintiff's effort to overcome mootness by reference to this Court's decision in *Tsombanidis et al. v. West Haven Fire Department*[17] is similarly misplaced. In *Tsombanidis*, the Court did not accept that a change in interpretation of fire regulations would moot the case. Unlike *Tsombanidis*, defendants herein are not dealing with changing regulations, but the application of relevant case law. The PSC had applied an outmoded - though once constitutional - approach to agency fee refund procedures, and now is aware of the state of the law. Plaintiff's rights are not dependent upon the interpretation given to the law by defendants, but are safeguarded by the present state of the law which defendants have sworn to uphold, having been apprised of their obligations.

Here, the only way defendants' "interpretation" of the law would change is if the United

---

[17]352 F.3d 565 (2nd Cir. 2003).

14

States Supreme Court repealed its doctrines governing the rights of agency fee payers. Even under *Tsombanidis*, it is clear that plaintiff's case is moot.

Further, plaintiff's assertions that defendants' repeated efforts at reforming its procedures during the course of this litigation somehow indicate a bad faith intention to violate his rights in the future are absurd on their face. The distortion of defendants' good faith reforms into proof of future bad faith begs credulity. Plaintiff himself has filed three different complaints in this matter with three different sets of arguments against defendants' practices. If defendants are not to be trusted by doing their level best to respond to plaintiff's shifting legal theories, then *a fortiori*, neither is he.

Finally, plaintiff is hoist on his own petard when he asserts that defendants' sworn statement to uphold the *Lehnert* standards in all future agency fee calculation is fatally vague. If the standards established in *Lehnert* are themselves so vague as to not admit of being upheld, then plaintiff's case should have been dismissed for failure to state a cause of action. In reality, all that defendants could reasonably be expected to do is apply the *Lehnert* standards going forward.

Plaintiff's argument suffers from a fundamental misunderstanding of the discretion vested by law in defendants to decide what is or is not a chargeable expenditure. Clearly, plaintiff believes that these decisions are cut and dried, but if that were true, there would be no need for arbitration of agency fee disputes in the first place. Disagreement is not a constitutional violation no matter how fervent plaintiff's belief to the contrary.

15

## POINT III

## DEFENDANTS DID NOT OBTAIN FROM
## PLAINTIFF AN INVOLUNTARY LOAN

Plaintiff alleges that the PSC impermissibly had obtained an involuntary loan for the Fiscal Years 1999-2000 and 2000-2001 because it had used his money for ideological purposes before the money was refunded and the money was not refunded to him with interest. Complaint ¶ 222.

This cause of action is moot because PSC now has refunded or intends to refund plaintiff's entire agency fee for the Fiscal Years 1999-2000 and 2000-2001, with interest, as explained in the accompanying Bell Affidavit.

In any event, the Second Circuit in *Andrews*, citing *Hudson*, finds that holding an objector's fee in escrow satisfies all constitutional concerns. Were Plaintiff correct in his assertion that waiting for his refund constitutes an impermissible loan, than arguably *Hudson* itself is wrong since the court permits unions to merely set aside the agency fees at issue until such future time when the appropriateness of the allocation may be determined.

To wit, there is nothing wrong with placing disputed agency fees into escrow, or as here, refunding them on a *pro rata* basis until the auditing process runs its useful course.

## CONCLUSION

Based on the foregoing, it is respectfully requested that defendants' cross-motion for summary judgment be granted in its entirety and plaintiff's motion for summary judgment be denied in its entirety, together with such other and further relief that the Court deems just and proper.

Dated: New York, New York
September 24, 2004

Respectfully submitted,

JAMES R. SANDNER
Attorney for Defendant
Office & P. O. Address
52 Broadway
New York, NY 10004-1603
(212) 533-6300

By: _____

CHRISTOPHER M. CALLAGY (CMC 5115)
Of Counsel



**New York State United Teachers**

**Office of General Counsel**
James R. Sandner
General Counsel

**Albany**                                    **New York**

Richard E. Casagrande              Claude I. Hersh
Associate General Counsel      Associate General Counsel

Ivor R. Moskowitz                    Stuart I. Lipkind
Associate General Counsel      Associate General Counsel

Richard A. Shane
Associate General Counsel

EV433282605US

September 21, 2004

**Via Express Mail**
Professor David Seidemann
38 Garfield Avenue
North Haven, Connecticut 06473

FILE

Re:     **Seidemann v. Bowen et al., 02 CV 3389(SJ)(LB)**
**Our File No. 57900-F202**

Dear Professor Seidemann:

Enclosed please find three (3) checks representing the full refund of your agency fee deductions for the Professional Staff Congress fiscal years 2001-02, 2002-03, and 2003-04, less whatever rebate had already been paid. Since no rebate had been paid for the 2002-03 fiscal year, your entire fees are refunded for that year.

Please note that the statutory interest rate of 9% per year has been added to these amounts yielding the following totals:

2001-02: $1,080.85

2002-03: $1,154.23

2003-04: $ 918.85

Since these figures represent the full refund of your fees, you have been made whole for the years in question.

Very truly yours,

JAMES R. SANDNER

By:     _____

CHRISTOPHER M. CALLAGY
Associate Senior Counsel

CMC:dd
enc.
c: Debra Bell

.NYC-Legal:85339        52 Broadway, 9th Floor • New York, N.Y. 10004 • (212) 533-6300

*Affiliated with the American Federation of Teachers, AFL-CIO • Representing teachers and other professionals, school-related professionals, higher education professionals, health care professionals, and retirees*



NYSUT

**PROFESSIONAL STAFF CONGRESS**
25 WEST 43RD STREET
NEW YORK, NY 10036

THE BANK OF NEW YORK
NEW YORK, NY 10036
1-1/210

9/20/2004

50453

PAY TO THE
ORDER OF      David Seidemann

One Thousand Eighty and 85/100******************************************************

$ ***1,080.85

David Seidemann
38 Garfield Avenue
North Haven, CT 06473

DOLLARS

MEMO     Balance representing full 'Agency Fee Refund' for 2001/02

John Hyland
Richard E. Seth

⑈"0 5 0 4 5 3"⑈  ⑉:0 2 1 0 0 0 0 1 8⑉:  ⑈"0 0 0 0 0 0 6 5 4 9"⑈

081084/3-90

**PROFESSIONAL STAFF CONGRESS**

David Seidemann

| Date | Type | Reference | | Original Amt. | | Balance Due | Discount | Payment |
|------|------|-----------|--|---------------|--|-------------|----------|---------|
| 08/31/2004 | Bill | | | 1,080.85 | | 1,080.85 | | 1,080.85 |

9/20/2004

50453

Check Amount    1,080.85

Cash Checking - BONY      Balance representing full 'Agency Fee Refund' for 2001/02      1,080.85

50454

## PROFESSIONAL STAFF CONGRESS

THE BANK OF NEW YORK
NEW YORK, NY 10036
1-270

9/20/2004

PAY TO THE
ORDER OF    David Seidemann

One Thousand One Hundred Fifty-Four and 23/100***********************************

$ **1,154.23

David Seidemann
38 Garfield Avenue
North Haven, CT 06473

DOLLARS

MEMO

Balance representing full 'Agency Fee Refund' for 2002/03

⑈050454⑈ ⑆0210000⑆⑈ ⑈00000008549⑈

## PROFESSIONAL STAFF CONGRESS

David Seidemann

| Date | Type | Reference | | | Original Amt. | | Balance Due | Discount | Payment |
|------|------|-----------|---|---|---------------|---|-------------|----------|---------|
| 08/31/2004 | Bill | | | | 1,154.23 | | 1,154.23 | | 1,154.23 |
| | | | | | | | | Check Amount | 1,154.23 |

9/20/2004    50454

Cash Checking - BONY    Balance representing full 'Agency Fee Refund' for 2002/03    1,154.23

081094/3-90

**PROFESSIONAL STAFF CONGRESS**
25 WEST 43RD STREET
NEW YORK, NY 10036

THE BANK OF NEW YORK
NEW YORK, NY 10036
1-1-210

9/20/2004

PAY TO THE
ORDER OF    David Seidemann

Nine Hundred Eighteen and 85/100*********************************************

$ **918.85

David Seidemann
35 Garfield Avenue
North Haven, CT 06473

DOLLARS

MEMO
Balance representing full 'Agency' Fee Refund for 2003/04

⑊050455⑊ ⑊021000018⑊ ⑊000000185⑊

50455

---

**PROFESSIONAL STAFF CONGRESS**

David Seidemann

| Date | Type | Reference | | | 9/20/2004 | | | 50455 |
|------|------|-----------|--|--|-----------|--|--|-------|
| 08/31/2004 | Bill | | Original Amt. 918.85 | | Balance Due 918.85 | Discount | | Payment 918.85 |
| | | | | | | Check Amount | | 918.85 |

Cash Checking - BONY

Balance representing full 'Agency' Fee Refund for 2003/04

918.85

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                                ) ss.:
COUNTY OF NEW YORK   )

     EVETTE SANTIAGO, being duly sworn, deposes and says, I am not a party to the action, am over 18 years of age and on September 24, 2004, I served one (1) copy of the annexed **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** in the following manner:

     By mailing same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

> David Seidemann
> Plaintiff *Pro Se*
> 38 Garfield Avenue
> North Haven, CT 06473

                                                  _____
                                                  EVETTE SANTIAGO

Sworn to before me this
24th day of September, 2004

_____
NOTARY PUBLIC

MARIA ISABEL LAPPIN
NOTARY PUBLIC, State of New York
No. 01LA4987772
Qualified in Nassau County
Commission Expires 10/21/05