UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DAVID SEIDEMANN,
                Plaintiff,

      - against-                     **OPINION AND ORDER**
                                                       02-CV-3389 (LB)
BARBARA BOWEN, personally and in her
capacity as President of PSC/CUNY (Professional
Staff Congress/City University of New York);
PSC/CUNY (Professional Staff Congress/City
University of New York),

                Defendants.
----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Plaintiff David Seidemann, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983[1] alleging that the agency fee refund procedure imposed by the union representing City University of New York (CUNY) employees, the Professional Staff Congress (PSC or union), is unconstitutional under the First Amendment because the union charges objecting fee payers for political and ideological expenses not related to the collective bargaining process. In his third amended complaint, plaintiff seeks declaratory and injunctive relief, the return and/or refund of plaintiff's agency fee for fiscal years 2001 to 2004, as well as compensatory and punitive damages. The parties filed cross-motions for summary judgment and have consented to trial by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, plaintiff's motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.

---

[1] Plaintiff cites to 42 U.S.C. §§1981 *et seq.* but the Court notes that plaintiff's claim alleging a constitutional violation is properly adjudicated under 42 U.S.C. § 1983. See, e.g., Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 298 n.3 (1986).

1

## BACKGROUND

The following facts are undisputed. Plaintiff is a tenured professor at Brooklyn College of the City University of New York (CUNY). Defendant PSC is the exclusive collective bargaining agent for professors at CUNY. Defendant Barbara Bowen is the current PSC President. CUNY deducts "agency fees" equivalent to the amount of union dues from professors' paychecks and remits those fees to the union. Professors who do not choose to become union members (known as "fee payers") can obtain a refund of their *pro rata* share of certain expenditures not related to the collective bargaining process by filing timely objections with the union. A portion of the fee payer's PSC dues are also paid to the American Federal of Teachers (AFT) and to the New York State United Teachers (NYSUT), national and state labor organizations affiliated with the PSC. Plaintiff is a fee payer who has filed objections with the union seeking to reduce his agency fee for charges he alleges are not related to the collective bargaining process.

## PROCEDURAL HISTORY

In June 2002, plaintiff commenced this action by order to show cause. The Honorable Sterling Johnson, Jr., United States District Judge, denied plaintiff's order to show cause because he failed to demonstrate irreparable harm. On July 12, 2002, plaintiff filed his first amended complaint and on January 14, 2003, plaintiff filed a second amended complaint. Upon close of discovery, plaintiff filed a third amended complaint on January 20, 2004.[2] On October 8, 2004, the parties cross-moved for summary judgment.[3]

---

[2] The third amended complaint replaced the three prior complaints filed by plaintiff and is the only complaint referenced herein.

[3] Pursuant to the Court's individual rules, the instant cross-motions were not filed with the Court until they were fully submitted on October 8, 2004.

2

A.  **Plaintiff's Summary Judgment Motion**

In his motion, plaintiff argues that:

1. The union charges fee payers for ideological activities, such as lobbying, speech of a political nature (public rallies, picket lines, concert and letter-writing campaigns), public relations activities, union newspaper reports, website reports, salaries attendant to these activities, legal costs, costs of state and national affiliated unions, that are not chargeable to objectors. Pl. Motion at 3-12.

2. The union's financial disclosure to non-members for fiscal year 2001/02 did not provide an adequate explanation for the basis of the fee. Specifically, plaintiff alleges that the union failed to report certain non-chargeable expenditures, such as the CUNY Budget Campaign, the Contract Campaign, the Albany lobby activities, the hiring of lobbying and public relations firms, and failed to describe the "other expenses" category or describe the nature of activities deemed "work-related." Pl. Motion at 12-16.

3. The union has not shown good faith in protecting the rights of fee payers by seeking to hold objectors chargeable for expenses involving political speech (such as public rallies, picket lines, concerts and letter-writing campaigns), by withholding information from fee payers and providing a different report to the Delegate Assembly, and by failing to parcel out payroll expenses for PSC employees engaged in non-chargeable activities. Pl. Motion at 16-19.

4. The union's requirement making final arbitration conditional on the fee payer's identification of the percent of fees in dispute is overly burdensome to objectors. Pl. Motion at 19.

5. The union's requirement that objections be renewed annually is unlawful. Pl. Motion at 19-20.

6. The union's actual practice, as opposed to its stated policy, does not provide fee payers

3

with the requisite information to assess the propriety of the union's fee. Plaintiff alleges that fee payers were informed by letter of the procedures for objecting, but the letter did not include any financial information or referred fee payers seeking financial information to the union's website imposing additional burdens on objectors. Pl. Motion at 20-22.

7. The union's rebate of $115.88 for fiscal year 2001/02 was too small to account for all the union's ideological expenditures. Pl. Motion at 22-23.

8. The union failed to rebate any part of the plaintiff's agency fee for fiscal year 2002/03 despite his timely objection to the union's ideological expenditures. Pl. Motion at 23.

9. The union failed to provide plaintiff with an opportunity to promptly challenge the amount of the agency fee for fiscal years 1999/00, 2000/01, 2001/02 and 2002/03 before an impartial decision-maker. For example, plaintiff's objection to the agency fee for fiscal year 2000/01 was not heard until September 2002 (27 months after plaintiff's objection was registered). Pl. Motion at 23-24.

10. The union's failure to rebate the agency fee for 1999/00 until November 2002 and PSC's failure to rebate the agency fee for fiscal year 2001/02 until October 17, 2002, amounted to involuntary loans without interest for those periods. Pl. Motion 24-25.

**B.    Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment**

Defendants argue that plaintiff's claims are moot because the union has reimbursed him in full for all agency fee payments he made in fiscal years 2001 to 2004 and they have changed their refund procedures. Thus, defendants argue that plaintiff has been made whole for the payments he made and that any claims regarding defendants' prior agency fee refund procedures have been rectified. Defendants argue that plaintiff's claims for declaratory and injunctive relief are likewise

moot as the PSC agency fee refund policy has been modified and plaintiff's remaining concerns have been redressed. Defendants further argue that the current agency fee refund procedure as set forth in the third amended complaint, Exhibit 15 (PSC's Agency Fee Refund Procedure), satisfies constitutional requirements. Furthermore, defendants argue that defendant Bowen is not liable in her individual capacity and therefore, all claims against her should be dismissed.

### C.   Plaintiff's Opposition to Defendants' Cross-Motion for Summary Judgment

Plaintiff maintains that the changes defendants implemented to the agency fee refund procedure still include "constitutionally defective provisions." Specifically, plaintiff maintains that the revised refund procedure is defective because (1) it requires the objector to identify "the percent of agency fees that s/he believes is in dispute" before it can be submitted to arbitration, (2) it requires fee payers to renew their objections each year, (3) it fails to provide financial disclosure of non-chargeable expenses.[4] Pl. Opposition at 9-10.

Plaintiff also argues that his claims are not moot because the refunds for the prior fiscal years cannot undo the constitutional harm he suffered when defendants used a portion of his prior agency fees to support ideological activities. Plaintiff maintains that his complaint cannot be rendered moot if the constitutional violations complained of are likely to recur since -- (i) the PSC administration is subject to periodic change during union elections, (ii) defendants failed to provide the requisite data to objectors in its April 15, 2004 letter to fee payers; (iii) defendants failed to eliminate violations during the course of the litigation, and (iv) defendants' new guidelines consists of vague terms. Pl. Opposition at 2-8.

---

[4] Plaintiff cites only to a report for fiscal year 2001/02, not to any other reports. Pl. Opposition at 10.

5

Finally, plaintiff counters that although defendants did refund plaintiff's full agency fee in 2004, the refunds did not cure the violation because the union did not escrow these fees and his fees were akin to an involuntary loan to the union. Pl. Opposition at 10-15.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). In determining whether a genuine issue of material fact exists, the district court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is improper if there is any evidence in the record that could reasonably support a verdict for the non-moving party.

Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As the Court held in Anderson, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S.

249-50 (citations omitted). Moreover, the pleadings of a *pro se* plaintiff are read liberally and interpreted "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).[5]

**B.     Mootness Doctrine**

Defendants argue that their payment of plaintiff's prior agency fees and their revision of the agency fee refund procedure ("refund procedure") renders plaintiff's claims moot. Plaintiff alleges that the revised refund procedure still violates his rights under Supreme Court precedent. Plaintiff further maintains that his claims are not moot since even under the revised refund procedure, he may still be charged for the union's political and ideological expenses in violation of the First Amendment. The Court must review defendants' challenge to jurisdiction on mootness grounds before addressing the substantive claims. See generally Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority to give opinions upon moot questions ...." (internal quotation marks omitted)).

Article III, section 2 of the United States Constitution limits the judicial power of federal courts to live cases and controversies. Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983) (per curiam). A case becomes moot when the relief sought can no longer be given or is no longer needed, thereby depriving the federal court of jurisdiction. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (finding claim challenging county law moot where county had completely cured any possible discriminatory effects); Catanzano v. Wing, 277 F.3d 99, 107 (2d Cir. 2001)

---

[5] Although Professor Seidemann is not a lawyer, and thus the Court has liberally construed his pleadings, the Court compliments his work which was always well-researched, documented and presented. The Court likewise compliments the professional manner in which the parties conducted themselves throughout this litigation. Though the dispute was heartfelt, the parties treated each other with courtesy and respect, a valuable and rare currency these days.

(finding portion of case seeking injunctive relief moot where parties agreed that the law was no longer being implemented). In Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167 (2000), the Supreme Court reaffirmed that "the standard ... for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 190 (quotation omitted). The party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." Laidlaw, 528 U.S. at 189.

"The voluntary cessation of allegedly illegal activities will usually render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Granite State Outdoor Advert., Inc. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002) (quoting Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996)); see also County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal citations omitted). There exists an exception to the mootness doctrine for circumstances which are "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911); Van Wie v. Pataki, 267 F.3d 109, 114 (2d Cir. 2001). This exception is generally applied to class actions or (1) where the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam).

Refund of Agency Fees

Because part of the relief sought by plaintiff is a refund of his agency fees for fiscal years 2001 to 2004, see Third Amended Compl. at 41, and defendants have fully refunded these fees, see Defendants' Reply Memorandum of Law, Unmarked Exhibit (letter to plaintiff dated September 21, 2004, enclosing checks for agency fees paid for fiscal years 2001/02, 2002/03 and 2003/04, representing a full refund for each year with 9% interest), this portion of the complaint is now moot. Plaintiff does not dispute that he has received the refunds, but argues that they do not moot his claim since it cannot undo the constitutional harm he suffered when defendants used a portion of his agency fee to support defendants' ideological activities. Plaintiff further argues that his agency fees were akin to an involuntary loan to defendants because the union did not escrow these fees.

Plaintiff's arguments regarding the refund of his agency fees for 2001 to 2004 are unavailing. Plaintiff would have been entitled to only a proportional refund of his agency fees for fiscal years 2001 to 2004; those fees attributable to the union's participation in political and ideological activities. Plaintiff would not have been entitled to a refund of the entire agency fee since some portion of the fee is attributed to the union's activities relating to the collective bargaining process. Thus, in a manner of speaking, by refunding the entire agency fee for fiscal years 2001 to 2004, plus 9% interest, plaintiff has received a small windfall. Plaintiff's complaint requested that the union "remit and/or refund plaintiff's agency fees for fiscal years 2001-04, see Third Amended Compl. at 41, which defendants have now done. Thus, the Court finds that this portion of plaintiff's complaint is moot. See, e.g., Carlson v. United Academics, 265 F.3d 778, 786-87 (9th Cir. 2001) (union's alteration of notice procedures mooted alleged deficiencies).

9

Agency Fee Refund Procedure[6]

Plaintiff argues that defendants' revised refund procedure does not cure the constitutional deficiencies and therefore his claims are not moot. Defendants argue that their current refund procedure has cured any problems which may have existed in the prior agency fee refund procedure. See Defendants' Memo of Law, Exhibit A, Bell Affidavit. "Whether a case has been mooted by the defendants' voluntary conduct is stringent" to ensure that the allegedly unconstitutional application does not temporarily cease only to resume after the claims have been dismissed. Laidlaw, 528 U.S. at 189. Here, the union has not met its heavy burden to establish that all of plaintiff's claims are moot because the current version of the refund procedure might change – for example, upon a change in the union's administration, as has occurred during the course of this litigation. Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 574 (2d Cir. 2003) (declining to hold plaintiff's claim against defendant moot because the interpretation of the fire code might change again upon a change in the State Fire Marshal's administration).

Even if the revised refund procedure rendered some of plaintiff's remaining claims moot, the Court finds that certain of plaintiff's claims fall under the exception to the mootness doctrine. Plaintiff's refund procedure claims, those not related to the refund of agency fees for fiscal years 2001 to 2004 or objections to specific expenses, but those claims that challenge the revised refund procedure as a whole, are claims that are "capable of repetition, yet evading review." Therefore these claims fall under the exception to the mootness doctrine.[7]

---

[6] Defendants' agency fee refund procedure is set forth in the Appendix, *infra*.

[7] Defendants adopted different versions of the refund procedure during the course of this litigation. The Court does not address the agency fee refund procedures in place prior to the current procedure which was adopted by the union on April 30, 2003 and is appended to

C.  **Agency Fee Refund Procedure - Procedural Safeguards under <u>Hudson</u>**

The First Amendment affords public-sector employees the freedom not to associate with a labor organization or union. Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 301 (1986) ("<u>Hudson</u>") (citing Abood v. Detroit Board of Educ., 431 U.S. 209 (1977)). There are limits to this constitutional freedom, however, in light of organized labor's important role in advancing employment conditions. Abood, 431 U.S. at 222, 225. Thus, as a means of curing the so-called "free-rider" problem posed by its representation of non-members, a union may charge each non-member employee a fair-share or agency fee equal to his or her per capita share of the union's expenses arising from its duties as a collective-bargaining representative. See id. at 225-26. A union, however, may not collect an agency fee to support ideological causes or other expenses insufficiently related to collective bargaining. Id. at 234-36. To ensure that fee payers are assessed only for agency fees properly chargeable to them, the Supreme Court has ruled that unions must adopt procedural safeguards "carefully tailored to minimize the [First Amendment] infringement." Hudson, 475 U.S. at 303.

First, the union must provide a fee payer with "sufficient information to gauge the propriety of the union's fee" often referred to as <u>Hudson</u> notice. Hudson, 475 U.S. at 306. Second, a fee payer must have an adequate opportunity to object to the agency fee allocation before an impartial decision-maker. Id. at 307. The two safeguards are linked; without the <u>Hudson</u> notice, a fee payer would lack a basis for deciding whether to object to the agency fee calculation. Third, the union must escrow the amounts reasonably in dispute while such objections are pending. Id. at 310; accord Andrews v. Educ. Ass'n of Cheshire, 829 F.2d 335, 339-41 (2d Cir. 1987) (upholding

---

Plaintiff's Third Amended Complaint. See Appendix, *infra*.

11

teachers' union's procedures for determining and objecting to agency fee).

Plaintiff argues that the defendants' refund procedure is unconstitutional because: (1) it requires the objector to identify "the percent of agency fees that s/he believes is in dispute" before it can be submitted to arbitration, (2) it requires fee payers to renew their objections each year, (3) it fails to provide financial disclosure of non-chargeable expenses and requires fee payers to review financial information on the union's website.

Review of Revised Agency Fee Refund Procedure

The Court finds that defendants' revised refund procedure meets the requirements set forth in Hudson. First, the refund procedure provides the fee payer with "sufficient information to gauge the propriety of the union's fee." Hudson, 475 U.S. at 306. The union is obligated to provide to the fee payer "prior to the objection periods, ... information as to the prior year's rebatable expenditures" and "as soon as they are available after the close of the union's fiscal year, the union will provide copies of the audited financial statements to the objector." See Third Amended Compl., Ex. 15. The Court disagrees with plaintiff that Hudson prohibits the union from referring fee payers to its website for additional financial information on the union's activities. Although Hudson did not address the propriety of posting information on a website, there is no reason that a fee payer, particularly a professor at a university like plaintiff, would not be able to access such information.[8]

Defendants' revised refund procedure also satisfies the second element of Hudson. The fee payer may "object to the expenditure of any part of the agency fee that represents that employee's pro rata share of expenditures by the union and its affiliates in aid of activities or causes of a

---

[8] Furthermore, "[t]he Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." Hudson, 475 U.S. at 307.

12

political or ideological nature only incidentally related to terms and conditions of employment" during the "period between May 1st and May 31st of the year prior to the beginning of the fiscal year," and the objector may appeal the determination of the reduced amount to the union president and eventually to an arbitrator. See Third Amended Compl., Ex. 15. Although the union's procedure does not provide a time line by which the union's final determination will be submitted to an arbitrator, it does provide for an "expeditious hearing" and therefore the refund procedure provides a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision-maker. Hudson, 475 U.S. at 307 (fee payer must have an adequate opportunity to object to the fair-share fee allocation before an impartial decision-maker; an expeditious arbitration may satisfy this requirement); Andrews v. Educ. Ass'n of Cheshire, 829 F.2d 335, 340 (2d Cir. 1987).

Plaintiff argues that defendants' revised refund procedure requirement of annual objections is unconstitutional. The Court disagrees. In fact, it is the fee payer's burden to make the objection known to the union. Hudson, 475 U.S. at 306 & n.16; see International Ass'n of Machinists v. Street, 367 U.S. 740, 774 (1961) ("dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee"). It is not overly burdensome to require a fee payer to alert the union that it is objecting to the agency fee on an annual basis since a fee payer may decide to become a union member or, failing that, may decide not to object in any given year. The union is not deemed to read the minds of fee payers by assuming that the fee will or will not be challenged in any given year.

Plaintiff further argues that defendants' revised procedure requires that fee payers identify the percentage of the agency fees in dispute before the challenge can be taken to an arbitrator.[9]

---

[9] Defendants' agency fee refund procedure requires that if the "objector is dissatisfied with the amount or appropriateness of the amount of the final determination, s/he may appeal that determination ... to the union local's president. *At that time the objector must indicate to the*

13

Defendants did not address this argument and the Court could not find a similar provision in its research and review of other agency fee refund procedures. The Court finds that requiring objectors to indicate the percent of agency fees in dispute, while not unconstitutional, is an unnecessary burden on the objector. It is well settled that defendants have the burden of demonstrating that the expenses charged to agency fee payers are reasonably germane to their role as collective bargaining representative, see Hudson, 475 U.S. at 306 (reiterating that the fee payer has the burden of raising the objection, but that the union retains the burden of proof since it possesses the facts and records which would determine the expenditures related to collective bargaining and political activities); Andrews, 829 F.3d at 340 (same). Requiring objectors to identify the percentage of the fee in dispute may give the appearance of shifting the burden from the union to the fee payer of demonstrating what expenses are reasonably germane to the union's collective bargaining role.

There is no rationale proffered for why the fee payer s required to identify the percentage of the fee at issue before the dispute can be presented to the union's president and subsequently to the arbitrator. Again, although not sufficient to sustain plaintiff's constitutional challenge, the union would be wise to reconsider this requirement in its agency fee refund procedure. While falling short of being unconstitutional, this requirement may impose an unnecessary burden on fee payers. As the Second Circuit has found, Hudson does not require that a union's procedures constitute the least restrictive process imaginable. "When the union's plan satisfies the standards established by Hudson, the plan should be upheld even if its opponents can put forth some plausible alternative less restrictive of their right not to be coerced to contribute funds to support political activities that they

---

*union local president the percent of agency fees that s/he believes is in dispute.*" See Third Amended Compl., Exhibit 15; Appendix, *infra*. Emphasis added.

14

do not wish to support." Andrews, 829 F.2d at 339-40.

Third, defendants' revised refund procedure provides for an advance reduction of the agency fee once a fee payer files an objection. Third Amended Compl., Ex. 15. In Ellis v. Brotherhood of Railway Clerks, 466 U.S. 435, 444 (1984), the Supreme Court held that in order to avoid forced subsidies forbidden by the First Amendment, unions must adopt procedures "such as advance reduction of dues *and/or* interest-bearing escrow accounts." Id. (emphasis added). The Supreme Court also noted in Hudson that "[t]he appropriately justified advanced reduction ... [is] necessary to minimize both the impingement and the burden." Hudson, 475 U.S. at 309. Thus, either an advance reduction or an escrow approach can satisfy Hudson. Compare Damiano v. Matish, 830 F.2d 1363, 1370 (6th Cir. 1987) (advance reduction required) with Andrews, 829 F.2d at 338-40 (2d Cir. 1987) (escrow sufficient).

## D. Chargeability Determinations under Lehnert

In addition to challenging the refund procedure as unconstitutional, plaintiff also makes specific objections which would require the Court to determine whether an expense is chargeable. For example, plaintiff argues that expenditures related to lobbying and public rallies and payments to affiliate unions should not be chargeable to fee payers. While the Supreme Court addressed the adequacy of the notice to fee payers in Hudson, the propriety of the union's chargeability determinations is another matter entirely and was considered separately by the Supreme Court in Lehnert v. Ferris Faculty Ass'n, 500 U.S. 507 (1991).

The Lehnert Court held that a union may charge fee payers for their *pro rata* share of expenses associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the fee payer's bargaining unit. Lehnert,

15

500 U.S. at 524. As long as there is "some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization, then that portion is chargeable to the fee payer." Id. The Court also found that lobbying and other political activities can be chargeable so long as those activities are related to the union's duties as a collective-bargaining agent. Id. at 519-20. In reaching these conclusions, the Court applied a three-part test to assess whether a particular union's expense is chargeable to fee-payers: "[C]hargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." Id. at 519.

Having found that defendants' agency fee refund procedure adequately safeguards plaintiff's constitutional rights by giving plaintiff sufficient information to decide whether to object and by providing for an impartial decision-maker to consider plaintiff's objections under Hudson, the Court need not determine whether certain expenses are properly chargeable under Lehnert since any specific objections plaintiff may have claimed for fiscal years 2001 to 2004 are now moot.[10]

---

[10] Generally, the role of the Court is not to address each objection a fee payer might raise as that would usurp the role of the arbitrator as provided in the refund procedure. Andrews, 829 F.2d at 340-341 (upholding use of an arbitrator to resolve agency fee calculation dispute); Hudson v. Chicago Teachers Union, Local No. 1, 922 F.2d 1306, 1314 (7th Cir. 1991) (requiring the court to review the fee calculation "would in effect render redundant and irrelevant the requirement[] that an impartial decisionmaker hear the dispute"), cert. denied, 501 U.S. 1230 (1991). Although the Second Circuit has not ruled on this issue, the Sixth, Seventh and Ninth Circuits have held that the Court should not involve itself in the chargeability determination, see (respectively) Jibson v. Michigan Educ. Ass'n-NEA, 30 F.3d 723, 730 (6th Cir. 1994); Hudson, 922 F.2d at 1314; Knight v. Kenai Peninsula Borough School District, 131 F.3d 807, 813-14 (9th Cir. 1997). The Court does not suggest that should plaintiff challenge the fee calculation in the future that he is required to arbitrate such claims. Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 880 (1998) (unless fee payers agreed to arbitration, they may not be required to exhaust an arbitration remedy before bringing their claims in federal court). Although it is implicit in Hudson that plaintiff should raise objections regarding chargeability determinations to an

## CONCLUSION

Accordingly, plaintiff's motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted. The Clerk of Court shall enter judgment dismissing this action. Each party shall bear their own costs.

SO ORDERED:

/s/
LOIS BLOOM
United States Magistrate Judge

Dated: November 18, 2005
       Brooklyn, New York

---

arbitrator before commencing an action in federal court, "the arbitrator's decision would not receive preclusive effect in any subsequent § 1983 action." Hudson, 475 U.S. at 308 n.21, see also Hudson, 922 F.2d at 1314 (if the arbitration decision is adverse to plaintiff, he can subsequently seek review in federal court).

# APPENDIX

The Agency Fee Refund Procedure, see Third Amended Compl., Exhibit 15, provides in pertinent part that:

> any person making agency fee payments to the union has the right to object to the expenditure of any part of the agency fee that represents that employee's pro rata share of expenditures by the union and its affiliates in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment.
>
> Such an objection, if any, shall be made by the fee payer ("the objector") individually notifying the union's local president of her/his objection only during the period between May 1st and May 31st of the year prior to the beginning of the fiscal year to which the objection pertains. The union's fiscal year commences on September 1st.
>
> Prior to the objection periods, the union shall provide information as to the prior year's rebatable expenditures. If such objection is made, the objector's agency fee for the next fiscal year will be reduced by the projected pro rata amount of expenditures for such political and ideological purposes based on the latest fiscal year's information for which there is a completed and available audited financial statement. The objector will be provided at the beginning of the new fiscal year with an advance payment equal to the amount of the reduction, together with an explanation as to how such a projected amount was calculated.
>
> If the objector is dissatisfied with the amount or appropriateness of the advance reduced amount, s/he may appeal that determination in writing and send it to the union local's president by U.S. Mail with thirty-five (35) calendar days following the union's mailing of the advanced payment amount. The question of the adequacy of the advance payment thereafter will be submitted by the union to a neutral party appointed by the American Arbitration Association for an expeditious hearing and resolution in accordance with its rules for agency fee determinations. The costs for any appeal to a neutral party under this procedure shall be borne by the union.
>
> As soon as they are available after the close of the union's fiscal year, the union will provide copies of the audited financial statements to the objector, including the final refund determination for the fiscal year at issue.

If the objector is dissatisfied with the amount or appropriateness of the amount of the final determination, s/he may appeal that determination in writing and send it to the union local's president by U.S. Mail within thirty-five (35) calendar days following the union's mailing of the advice regarding the amount of the final determination. At that time the objector must indicate to the union local president the percent of agency fees that s/he believes is in dispute. The question of the adequacy of the amount of the final determination thereafter will be submitted by the union to a neutral party appointed by the American Arbitration Association for an expeditious hearing and resolution in accordance with its rules for agency fee determinations. The costs for any appeal to a neutral party under this procedure shall be borne by the union.

Adopted by the PSC Delegate Assembly on April 30, 2003.